UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| ERNEST T. WOODRUFF JR. | ) | |
| | ) | |
| v. | ) | 1:07-cv-41/1:05-cr-109 |
| | ) | *Edgar* |
| UNITED STATES OF AMERICA | ) | |

## **MEMORANDUM**

The defendant, Ernest T. Woodruff Jr. ("Woodruff"), has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 [Court File No.20].[1] The Clerk is **DIRECTED** to serve a copy of the motion and the Court's Memorandum Opinion and Judgment on the United States Attorney. For the reasons stated below, the United States Attorney shall not be required to file an answer or other pleading to the motion. The Court has determined a hearing is not necessary and concludes that the § 2255 motion lacks merit and will be **DENIED**.

**I.     Procedural Background**

On September 13, 2005, a United States grand jury sitting for the Eastern District of Tennessee, Chattanooga Division, returned a six-count indictment charging Woodruff with weapon and bank robbery crimes. Count One charged that on October 21, 2003, Woodruff and another, aiding and abetting each other, took by force, violence, and intimidation, money belonging to Union Planters Bank in Chattanooga, Tennessee, a bank whose deposits were insured by the Federal Deposit Insurance Corporation, and during the commission of the robbery putting in jeopardy the life of a person by the use of a deadly weapon, in violation of 18 U.S.C. §§ 2113(a), 2113(d), and

---

[1] Citations to docket entries will refer to the criminal court case file. All filings in this § 2255 proceeding shall be filed in the criminal court case file (1:05-cr-109).

1

2. Count Two of the indictment charged Woodruff and another, aided and abetted by one another, used, carried, and brandished a firearm during and in relation to a crime of violence, *i.e.*, the bank robbery charged in Count One, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and 2. Woodruff was charged in Count Three, with robbing a federally insured bank in Chattanooga, Tennessee on December 5, 2003, and putting another person's life in jeopardy by use of a deadly weapon, in violation of 18 U.S.C. § 2113(a), 2113 (d) and 2. Count Four charged Woodruff and another, aided and abetted by one another, used, carried, and brandished a firearm during and in relation to a crime of violence, the bank robbery charged in Count Three of the indictment, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and 2. In Count Five, Woodruff was charged with robbing, by use of a deadly weapon, Union Planters Bank, a federally insured bank, in Chattanooga, Tennessee on March 31, 2004, in violation of 18 U.S.C. § 2113(a) and 2113(d) and 2. Count Six charged Woodruff and another, aided and abetted by one another, used, carried, and brandished a firearm during and in relation to a crime of violence, *i.e.*, the bank robbery Charged in Count Five of the Indictment in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and 2.

On November 7, 2005, Woodruff pleaded guilty to Counts One through Five of the Indictment with the benefit of a plea agreement. On February 13, 2006, Woodruff was sentenced to a total term of 462 months imprisonment–78 months on each of Counts One, Three, and Five to be served concurrently; 84 months on Count Two; and 300 months on Count Four. The terms of imprisonment on Counts Two and Four run consecutively to each other and to all other counts. Woodruff did not pursue a direct appeal from the judgment of conviction. Woodruff's judgment was

entered on February 17, 2006, and he had ten (10) days, until March 3, 2006,[2] to file a notice of appeal. When a § 2255 movant does not pursue a direct appeal to the court of appeals, his conviction becomes final on the date on which the time for filing such appeal expired. *Sanchez-Castellano v. United States*, 358 F.3d 424, 425 (6th Cir. 2004). Therefore, the one-year statute of limitations began to run on March 3, 2006. Therefore, Woodruff's motion was timely filed on or about February 6, 2007.

## II.     Standard of Review

This Court must vacate and set aside the sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255. Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveals the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the Court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th

---

[2]     Woodruff's judgment was entered on Friday, February 17, 2006. Applying the computation rule in Rule 26(a)(1) of the Federal Rules of Appellate Procedure, the day of the act is excluded, thus, Woodruff's 10-day period began on February 20, 2006, because, under Rule 26(a)(2) of the Federal Rules of Appellate Procedure, intermediate Saturdays, Sundays, and legal holidays are excluded when the period is less than eleven days. Therefore, excluding the weekend, the 10-day period began on Monday, February 20, 2006. Then, excluding the intermediate Saturdays and Sundays, Woodruff had until March 3, 2006, to timely file a notice of appeal.

Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted)(§ 2254 case); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994)(applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F.2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a nonconstitutional error requires a showing of a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996).

Further, a § 2255 motion is not a substitute for a direct appeal and it cannot do service for an appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *United States v. Timmreck*, 441 U.S. 780, 784 (1979); *Grant v. United States*, 72 F.3d at 506; *United States v. Walsh*, 733 F.2d 31, 35 (6th Cir. 1984). Thus, Woodruff cannot use a § 2255 motion to litigate the issues that should have been presented and decided on direct appeal unless cause is shown for the tardy challenge and "actual prejudice" resulting from the error is demonstrated, *United States v. Frady*, 456 U.S. 152, 167-68

4

(1982), or Woodruff shows that he is actually innocent of the crime. *See Bousley v. United States*, 523 U.S. at 622. Issues which are presented and considered on direct appeal cannot be litigated again in a § 2255 proceeding absent exceptional circumstances or an intervening change in the law. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir.), *cert. denied*, 528 U.S. 933 (1999); *Oliver v. United States*, 90 F.3d 177, 180 (6th Cir. 1996); *DuPont v. United States,* 76 F.3d 108, 110-11 (6th Cir. 1996).

### III. Facts

The following pertinent facts are taken from the Presentence Investigation Report ("PSR") prepared by the United States Probation Office:

> 10. On October 21, 2003, at approximately 3:54 p.m., the Union Planters Bank, located at 830 Eastgate Loop in Chattanooga, Tennessee, was robbed by two masked, gloved, black males who were armed with handguns. This robbery was a "takeover" style, with victim bank employees forced to the floor. The robbers forced a teller to open the bank vault and escaped with $120,885 in United States currency, which was insured by the Federal Deposit Insurance Corporation. This amount includes approximately $6,100 in mutilated monies which were accumulated by the bank for return to the Federal Reserve.
>
> 11. On December 5, 2003, at approximately 10:35 a.m., the AmSouth Bank located at 3303 Cummings Highway, Chattanooga, Tennessee was robbed by two masked, gloved, black males who were armed with handguns. This robbery was a "takeover" style, with victim bank employees forced to the floor. The robbers forced a teller to open the bank vault and escaped with $45,675 in United States currency which was insured by the Federal Deposit Insurance Corporation. Employees observed the robbers enter a maroon, four door Buick Century and drive away from the bank.
>
> 12. At approximately 7:00 p.m. on December 5, 2003, an agent with the Federal Bureau of Investigation (FBI) was contacted by the Chattanooga Police Department about a stolen maroon four door Oldsmobile recovered at the Bi-Lo grocery store located at 115 Browns Ferry Road, Chattanooga, Tennessee. The store is located less than one-half mile away from the AmSouth Bank. Upon examining the stolen vehicle, the FBI agent noticed that while the vehicle was not running, the radio was playing, and the steering column was "punched." There was a screwdriver found in the vehicle. Further, while the temperature was cold, all of the vehicle's windows

5

were open to some extent. It was determined that the vehicle was registered to Lebron Russell. Mr. Russell was contacted by telephone and he informed agents that he was the owner of the vehicle, but that approximately one year ago, he loaned the vehicle to his granddaughter, Lanita Diane Russell. The vehicle was stolen from the Convergys' parking lot at Eastgate Mall during the daylight hours of December 4, 2003. Lanita Russell had reported the theft to the Chattanooga Police Department. Mr. Russell also stated the vehicle had been stolen at least three times prior to December 4, 2003, including twice in October 2003. The vehicle was recovered on two occasions behind the Veterans Administration Building located at Eastgate Mall. The FBI agent reviewed police records and conducted interviews at Convergys. The agent learned the vehicle was stolen on October 21, 2003, from the Convergys parking lot and was recovered on October 21, 2003, near the Veterans Administration adjacent to Eastgate Mall. This is the same date of the Union Planter's robbery at Eastgate Mall. The FBI agent also reviewed videotape provided by Convergys of the parking lot area on December 4, 2003. The maroon Oldsmobile was observed immediately after it was stolen and observed the vehicle being followed from the parking lot by a white Jeep Grand Cherokee.

13. On March 31, 2004, at approximately 9:47 a.m., the Union Planters Bank located at 830 Eastgate Loop, Chattanooga, Tennessee was robbed by two masked gloved, black males who were armed with handguns. This robbery was a "takeover" style, with victim bank employees forced to the floor. The robbers forced a teller to open the bank vault and escaped with $40,562 in United States currency which was insured by the Federal Deposit Insurance Corporation. During this robbery, an employee of the General Nutrition Center (GNC) located at Eastgate Mall entered the bank in her uniform, carrying $38 in cash which she hoped to convert to coinage for the GNC store. When she entered the bank, one of the robbers grabbed her and threw her to the floor and then took the money from her.

14. On March 31, 2004, at approximately 10:50 a.m., the Chattanooga Police Department recovered a stolen white Oldsmobile with its motor running in the parking lot of the Bicentennial Library located adjacent to the Eastgate Mall parking lot. The steering column of the vehicle had been punched. FBI agents later learned the vehicle had been stolen from the Lowe's home improvement store in Fort Oglethorpe, Georgia on March 29, 2004.

15. On October 29, 2004, the FSG Bank located on Highway 58 in Chattanooga, Tennessee was robbed by two males. The males were spotted by officers of the Chattanooga Police Department as they left the bank. After a short chase, the men were apprehended and identified as Reginald Taylor and Calvin Tory.

16. In December 2004, Calvin Tory was interviewed by the FBI and provided information regarding his involvement with Ernest Woodruff and Reginald Taylor. He stated the robbery of the FSG Bank was the first robbery in which he participated.

He stated he was a lifelong friend of Mr. Woodruff's and that Mr. Woodruff admitted to him that he (Woodruff) and Reginald Taylor together robbed three banks. Mr. Tory stated that Mr. Woodruff and Mr. Taylor robbed the Union Planters Bank at Eastgate on two occasions and the AmSouth Bank located near the Tennessee Highway Patrol station, near the Tennessee/Georgia line. One agent was aware that the Tennessee Highway Patrol station is located on Cummings Highway which is approximately 1.5 miles from the AmSouth Bank robbed in December 2003. Calvin Tory provided details pertaining to each robbery, including the roles of both Ernest Woodruff and Reginald Taylor during each robbery; the types of weapons used in the robberies; and details pertaining to the cars used in the robberies. Calvin Tory also saw the money that was stolen in the first Union Planters robbery. The details could have only come from information provided by a participant in the robberies.

17. On September 1, 2005 and September 8, 2005, Reginald Taylor was interviewed by the FBI pursuant to a proffer agreement. Mr. Taylor admitted to robbing each of the banks with Ernest Woodruff. Mr. Taylor provided details regarding each of the bank robberies including the roles that he and Mr. Woodruff played in each robbery, the types of weapons used, and their actions in the banks. For example, Mr. Taylor stated that some of the money stolen from the Union Planter's Bank on October 21, 2003, was mutilated. Reginald Taylor also stated that they used Mr. Woodruff's white Jeep as transportation to steal the maroon Buick from the Convergy's parking lot. He also stated that after switching vehicles following this same robbery, he and Mr. Woodruff drove directly to the Motel 6 located on Lee Highway in Chattanooga, Tennessee, where they counted and divided the money. Reginald Taylor recalled that Mr. Woodruff's girlfriend, Marquitta "Keita" McRae was in the room when they arrived and saw them with the money. Mr. Taylor said that a dye bomb blew up in the maroon Oldsmobile while they made the getaway from the AmSouth Bank robbery, making some of the money unusable.

18. The FBI obtained Ernest Woodruff's cellular telephone records and determined that Mr. Woodruff called the Motel 6 on eight occasions between October 18, 2003, and October 21, 2003, including one call placed to the hotel at 4:04 p.m. on October 21, 2003, just minutes after the first Union Planters Bank robbery ended. FBI agents determined that Mr. Woodruff also placed numerous calls to a cellular telephone number subscribed to by Reginald Taylor on the days leading up to and after the first Union Planters Bank robbery. A further review of the phone records revealed that the phone calls between Mr. Taylor and Mr. Woodruff continued through at least April 2004. It was also determined that Ernest Woodruff was a customer of the Union Planters Bank and regularly used the ATM machine located at the 830 Eastgate Loop branch. In fact, Ernest Woodruff used the ATM machine at 830 Eastgate Loop within the week prior to each of the robberies committed at that location.

19. Ernest Woodruff and Reginald Taylor were stopped by the Dade County

(Georgia) Sheriff's Department on or about May 25, 2004, following a traffic stop in a black Jeep. Each was arrested after deputies found a .357 magnum revolver and approximately 15 pounds of marijuana in Ernest Woodruff's Jeep. When interview [sic] by the FBI, Reginald Taylor stated this was the same .357 revolver used by Mr. Woodruff during the bank robberies and the Jeep was the same Jeep used by he and Mr. Woodruff to steal the maroon Buick from Convergys. FBI agents determined that during the time period of the robberies, Mr. Woodruff was the registered owner of a white Jeep. Reginald Taylor advised agents that at some point prior to the May 25, 2004 arrest by Dade County, Ernest Woodruff had the white Jeep painted black.

20. Calvin Tory and Reginald Taylor pled guilty to Armed Bank Robbery and Brandishing a Firearm During a Crime of Violence for the October 29, 2004 FSG Bank robbery. Both were sentenced on September 26, 2005. Calvin Tory received a reduction in his sentence due to a 5K motion filed by the government. Mr. Tory was sentenced to a total of 70 months (30 months on the robbery charge and 40 months on the firearm charge). Reginald Taylor was sentenced to a total of 125 months (41 months on the robbery charge and 84 months on the firearm charge).

PSR at 4-7.

At the February 13, 2006 sentencing hearing, the Court found that Woodruff's criminal history category was III. Woodruff's total offense level was 28. Woodruff's offense level of 28, combined with his criminal history category of III, resulted in a sentencing range of 481 to 505 months imprisonment. However, based on Woodruff's assistance to the government, a two-level departure resulted in a sentencing range of 462 to 481 months imprisonment. Woodruff was sentenced to 462 months of imprisonment, to be followed by three (3) years of supervised release.

## IV. Analysis

### Ineffective Assistance of Counsel

Woodruff's § 2255 motion to vacate contains two claims of ineffective assistance of counsel. Woodruff claims counsel failed to argue a conviction under 18 U.S.C. § 2113 (a) and (d) and a conviction under § 924(c) amounted to double jeopardy. In addition, Woodruff claims counsel was ineffective for failing to object to the sentencing enhancements on the basis of the intervening

8

change in the law announced in *United States v. Booker*, 543 U.S. 220 (2005). The Court will address each claim separately as raised by Woodruff.

To establish ineffective assistance of counsel Woodruff must demonstrate, as established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), two essential elements: (1) counsel's performance was deficient, i.e., below the standard of competence demanded of attorneys in criminal cases; and (2) counsel's deficient performance prejudiced the defense, i.e., deprived the defendant of a fair trial rendering the outcome of the trial unreliable. *Id*. at 687-88; *see also Flippins v. United States*, 808 F.2d 16, 17-18 (6th Cir.), *cert. denied*, 481 U.S. 1056 (1987). In plea proceedings, the movant must show but for counsel's deficient performance, he would not have pleaded guilty. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). The standard by which a court reviews counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Sims v. Livesay*, 970 F.2d 1575, 1579-80 (6th Cir. 1992).

### A. Double Jeopardy

Woodruff claims counsel was ineffective for allowing him to plead guilty and be sentenced pursuant to 18 U.S.C. § 2113(a) and (d), with respect to Counts One, Three, and Five of the indictment and 924(c) with respect to Counts Two and Four of the indictment because it was clearly established by law and criminal statute that such a plea constituted double jeopardy and double counting since the 2113(d) convictions took into account the firearm that was used in his 924(c) conviction. Woodruff supports his argument with *Busic v. United States*, 446 U.S. 398 (1980), a case that has been statutorily overruled by the Comprehensive Crime Control Act of 1984. The 1984 act amended Section 924(c) to include a mandatory penalty for the use of a firearm during a federal

9

crime of violence and clearly requires a cumulative punishment in addition to that provided for the underlying violent crime. Pub. L. No. 98-473§ 1005, 98 Stat.1837, 2138.

Woodruff's claim that the imposition of separate sentences for armed bank robbery under 18 U.S.C. § 2113(d) and brandishing a firearm during and in relation to an armed bank robbery under 18 U.S.C. § 924(c) in violation of the Double Jeopardy Clause and the Supreme Court's decisions in *Simpson v. United States*, 435 U.S. 6 (1978) and *Busic v. United States*, 446 U.S. 398 (1980) does not entitle him to § 2255 relief. Although these cases support Woodruff's position, they have been abrogated since 1984. Indeed, in *Simpson*, the Court held that a single instance of armed bank robbery could not support charges under both 18 U.S.C. §§ 2113(d) and 924(c). The *Simpson* Court stressed that even though § 924(c) made clear that a sentence for its violation was to be "in addition to" punishment imposed for the underlying predicate offense, this statement failed to express with sufficient clarity that cumulative punishment should be imposed under § 924(c) where the statute creating the underlying predicate offense provided for an enhancement where a dangerous weapon was used. *Simpson*, 435 U.S. at 8; *see also Busic*, 446 U.S. at 404 ("prosecution and enhanced sentencing under § 924(c) is simply not permissible where the predicate felony statute contains its own enhancement provision.")

However, the Supreme Court has since recognized that a Congressional amendment to § 924(c) in 1984 abrogated *Simpson* and *Busic* on this issue. *See United States v. Gonzales*, 520 U.S. 1 (1997). The *Gonzales* Court observed that "[i]n 1984, Congress amended § 924(c) so that its sentencing enhancement would apply regardless of whether the underlying felony statute 'provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device. Comprehensive Crime Control Act of 1984, Pub. L. 98-473, § 1005(a), 98 Stat. 2138-2139.'"

*Id*. at 10. The 1984 amendment clarified Congress's "desire to run § 924(c) enhancements consecutively to all other prison terms, regardless of whether they were imposed under firearm enhancement statutes similar to § 924(c)." *Gonzales*, 520 U.S. at 10. As such, "Congress thus repudiated the result we reached in *Busic v. United States...*" *Id.* (noting that the amendment abrogated *Simpson* as well). Thus, Woodruff's contention that a separate consecutive sentence under § 924(c) infringed the Double Jeopardy Clause is without merit. The legislative history of the amended text of § 924(c) supports the conclusion that a conviction under § 2113 and enhanced sentencing under § 924(c) is permissible, mandated, and does not constitute double jeopardy. Accordingly, Woodruff's claim of constitutionally ineffective counsel for failing to raise an argument that is indisputably devoid of legal merit must be rejected.

        **B.**     ***Booker* Claim**

Woodruff claims counsel was ineffective for failing to challenge his sentencing enhancements under *United States v. Booker*, 543 U.S. 220 (2005) which was decided prior to his sentencing. Woodruff contends that *Booker* requires the Court to resentence him due to enhancements (the property belonged to a financial institution, computed loss valuations, and brandishing a firearm) not found by a jury nor alleged in the indictment.

In *Booker*, the Supreme Court concluded the Sixth Amendment prevents federal judges from making factual determinations that increase a defendant's sentence beyond that which is authorized on the basis of facts "established by a plea of guilty or a jury verdict." *Booker*, 543 U.S. at 244. Specifically, the Supreme Court stated that it reaffirmed its holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000): "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must

11

be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 543 U.S. at 244.

The Court determined that enhancing sentences based on facts found by the court alone and not by the jury violated the Sixth Amendment imperative that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt. *Id.* An "enhanced sentence" is a guideline sentence "exceeding the maximum authorized by the facts established by the plea of guilty or a jury verdict." *Id.*

*Booker* was decided on January 12, 2005. However, the Supreme Court did not announce that *Booker* was retroactively applicable. *Booker* is not applicable to cases that were final prior to the Supreme Court's decision in *Booker,* and the Sixth Circuit has specifically determined *Booker* is not applicable on collateral review. *See Humphress v. United States*, 398 F.3d 855 (6th Cir. 2005) (*Booker's* rule does not apply retroactively in collateral proceedings). However, Woodruff was sentenced on February 13, 2006, after *United States v. Booker*, 543 U.S. 220 (2005) had already been decided. Therefore, *Booker's* holdings applied to his case. However, since Woodruff failed to raise the *Booker* claims in the district court or on direct review the claim is procedurally defaulted unless Woodruff can show cause for his default and actual prejudice. Woodruff claims counsel's ineffectiveness excuses his failure to challenge the enhancement of his sentence based on *Booker* in his prior criminal proceedings and he was prejudiced because his sentence exceeded the maximum authorized by the facts established by his plea and admitted by him. The Court disagrees.

Woodruff reached a plea agreement pursuant to Fed.R.Crim.P. 11(c)(1)(A), in which the

government consented to drop one of the three 18 U.S.C. § 924(c) firearms charges and implemented a plea agreement including very specific penalties to which Woodruff would be exposed. Woodruff agreed he could receive up to a life sentence. Moreover, each enhancement applied to Woodruff's base offense level was based on facts contained in the counts of the indictment to which he pleaded guilty; facts he admitted in the plea agreement;[3] and/or facts he admitted in the factual basis announced in court during his rearraignment. In addition, the facts to which Woodruff objects are contained in the presentence report and his failure to object to those facts operates as an admission of those facts. *See United States v. Stafford*, 258 F.3d 465, 475-76 (6th Cir. 2001) (holding that defendant's failure to object to presentence report operates as an admission as to drug types and quantities set forth in presentence report); *United States v. Harris*, 132 Fed.Appx. 46, 48-49 (6th Cir. 2005), (Table decision) *available in* 2005 WL 894581 (holding that defendant was deemed to have admitted that his crime involved three firearms where he failed to object to inclusion of this fact in the presentence report).

Woodruff pleaded guilty to three bank robberies.[4] Woodruff maintains the enhancements

---

[3] By pleading guilty, a defendant admits the facts contained in the indictment. *United States v. Jones*, 128 Fed.Appx. 490, 495 (6th Cir. 2005) ("Jones has not suffered a Sixth Amendment violation because no judge-found facts were used to enhance his sentence. The indictment contains the facts to which Jones now objects, and by pleading guilty, Jones admitted those facts.").

[4] Woodruff received 78 months on each of the bank robbery convictions–Counts One, Three, and Five–and a consecutive term of 84 months on Count Two and 300 months on Count Four. The guideline calculation on Count One is as follows: Pursuant to § 2B3.1(a) of the United States Sentencing Guidelines ("U.S.S.G."), the base offense level for bank robbery is 20. Woodruff received a two-point enhancement, pursuant to U.S.S.G. § 2B3.2(b)(1), because the property of a financial institution was taken and a two-point enhancement, pursuant to U.S.S.G. § 2B3.1(b)(7)(C) because the loss was more than $50,000 but less than $249,999. Thus the adjusted offense level on Count One was 24. The guidelines calculation on Count Three is as follows: The base offense level is 20. U.S.S.G. § 2B3.1. Woodruff received a 2 level

13

for taking property from a financial institution, brandishing a firearm during a crime of violence, and amount of loss are improper because they were not authorized by facts established by his guilty plea. Woodruff is simply incorrect in this assertion. The 2 level enhancement on Counts One, Three, and Five pursuant to USSG § 2B3.1(b)(1) was proper because the property was taken from a financial institution, a fact not based on additional facts found by the district judge, but rather, based on Woodruff's guilty plea to robbing a bank, *i.e.,* taking property from a financial institution. Likewise the five level enhancement for brandishing a firearm during the robbery in Count Five was based on his guilty plea to robbing the bank while armed and the facts establishing the robbery was a "takeover" style robbery which was accomplished with handguns. Thus, this enhancement was not based on additional facts found by the district judge.

Finally, the application of U.S.S.G. § 2B3.1(b)(7) enhancement for the amount of loss was proper. The factual basis to which Woodruff agreed and pleaded guilty included values of loss incurred by the Banks as a result of the robberies. In this case, the factual basis specifies that the

---

enhancement pursuant to U.S.S.G. § 2B3.2(b)(1), because the property of a financial institution was taken and a one-point enhancement, pursuant to U.S.S.G. § 2B3.1(b)(7)(B) because the loss was more than $10,000 but less than $49,999. Thus the adjusted offense level on Count Three was 23. The guideline calculation on Count Five is as follows: Pursuant to § 2B3.1 of the U.S.S.G., the base offense level for bank robbery is 20. Woodruff received a 2 level enhancement pursuant to U.S.S.G. § 2B3.2(b)(1), because the property of a financial institution was taken and a one-point enhancement, pursuant to U.S.S.G. § 2B3.1(b)(7)(B) because the loss was more than $10,000 but less than $49,999. In addition, he received a 5 level enhancement pursuant to U.S.S.G. § 2B3.1(b)(2)(C), because a firearm was brandished. Thus the adjusted offense level on Count Five was 28. Pursuant to U.S.S.G. § 3D1.4, the combined offense level for Counts One, Three, and Five was 31. In addition, Count Two-Brandishing a Firearm in Furtherance of a Crime of Violence-carries a mandatory minimum sentence of 7 years to a maximum of life, to be run consecutively to any other sentence imposed. *See* U.S.S.G. § 2K2.4. Finally, Count Four, a subsequent conviction for brandishing a firearm, carries a mandatory minimum sentence of 25 years to a maximum of life to run consecutive to any other sentence. *See* U.S.S.G. § 2K2.4.

loss incurred by the Union Planters Bank (Count One of the Indictment) from the October 21, 2003 bank robbery was over $120,000; the AmSouth Bank (Count Three) from the December 5, 2003 bank robbery was over $45,000; and Union Planters Bank (Count Five) from the March 31, 2004 bank robbery was over $40,000 (Rearraignment Transcript). In enhancing Woodruff's sentence for an "amount of loss," the district court did not rely upon judge-found facts but rather relied upon the facts to which Woodruff agreed when entering his guilty plea. Therefore, pursuant to Woodruff's admissions during his rearraignment and relying on the facts admitted in his plea, his Sixth Amendment rights were not violated during sentencing when the Court applied an enhanced adjustment for "amount of loss" pursuant to § 2B3.1(b)(7)(E), which enhanced his sentence beyond the base level offense Guideline range. In sum, counsel was not ineffective for failing to make a frivolous argument attacking enhancements which were authorized by the facts established by Woodruff's plea of guilty. Thus, this claim must also fail.

**V.     Conclusion**

For the reasons set forth above, the Court concludes Woodruff is not entitled to any relief under 28 U.S.C. § 2255 as his conviction and sentence are not in violation of the Constitution or laws of the United States. A separate judgment will enter **DENYING** Woodruff's § 2255 motion [Court File No. 20].

An appropriate judgment will enter.

>        /s/ R. Allan Edgar
> R. ALLAN EDGAR
> UNITED STATES DISTRICT JUDGE